UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| A.H., a minor child, by and through their parent and legal guardian, D.H., | Case No. 1:25-cv-00489-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| NAMPA SCHOOL DISTRICT NO. 131; IDAHO DEPARTMENT OF HEALTH AND WELFARE; IDAHO STATE DEPARTMENT OF EDUCATION; and DOES I-V, | |
| Defendants. | |

**INTRODUCTION**

Before the Court are Defendants the Idaho State Department of Education's

and the Idaho Department of Health and Welfare's motions to dismiss. *See* Dkts. 5,

7. For the reasons explained below, the Court will grant the motions.

**BACKGROUND**

Plaintiff A.H. is a minor, teenaged child[1] with multiple disabilities and

medical conditions, including autism spectrum disorder, Tourette's syndrome,

---

[1] As of August 2025, A.H. was either 15 or 16. *See Comp.* ¶ 1 (alleging that A.H. is 15); *id.* ¶ 12 (alleging that A.H. is 16).

attention-deficit/hyperactivity disorder, and Type I diabetes. He has been eligible for special education services under the federal Individuals with Disabilities Education Act since kindergarten.

In June 2024, A.H. became a resident of the Southwest Idaho Treatment Center (SWITC), a residential treatment facility owned and operated by the Idaho Department of Health and Welfare. "SWITC is a treatment center for individuals with developmental disabilities who cannot be served effectively in the community and all other placement options have been exhausted." *Comp.* ¶ 73, Dkt. 1. SWITC does not provide direct educational instruction. Accordingly, shortly after A.H. was placed at SWITC, staff members contacted Nampa School District No. 131. The school district then allegedly made unilateral decisions about A.H.'s educational placement for the 2024-2025 school year, including placing him in a homebound educational setting.

Plaintiff alleges that, among other things, the school district failed to timely convene a meeting of the IEP team, failed to adopt or develop an appropriate IEP at the start of the 2024-2025 school year, and failed to provide a full school day of instruction. Plaintiff further alleges that the school district failed to educate A.H. in the least restrictive educational environment and instead steered him into more restrictive and segregated settings, including a separate school program referred to as "Gateways," without adequately considering whether he could be educated in a

less restrictive setting with appropriate supports and services.

On February 24, 2025, Plaintiff filed a request for a due-process hearing. The request named Nampa School District No. 131, the Idaho Department of Education, and the Idaho Department of Health and Welfare as respondents. The hearing officer dismissed the Idaho Department of Education and the Idaho Department of Health and Welfare from the proceeding. As for the merits, the hearing officer concluded that plaintiff failed to establish that the Nampa School District denied A.H. a free and appropriate public education.

In August 2025, Plaintiff filed this civil action seeking judicial review of the administrative decision. Plaintiff challenges both (1) the hearing officer's determination on the merits as to the Nampa School District and (2) the dismissal of the Idaho Department of Education and the Idaho Department of Health and Welfare. The Nampa School District filed an answer. The Idaho Department of Education and the Idaho Department of Health and Welfare moved to dismiss.

## LEGAL STANDARD

Plaintiff brings this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(2)(A), which authorizes a party aggrieved by the findings and decision resulting from an impartial due process hearing to bring a civil action in federal district court. Under the Act, a due process complaint is adjudicated through a hearing conducted pursuant to § 1415(f), and the resulting findings and

decision are subject to administrative appeal under § 1415(g) and judicial review

under § 1415(i).

Where, as here, a party seeks review of a hearing officer's dismissal of a

respondent on statutory or jurisdictional grounds, the motions to dismiss brought

under Federal Rule of Civil Procedure 12(b)(1) and (6) function as the procedural

vehicle by which the Court is asked to resolve a legal question arising from the

administrative proceedings. The Court therefore reviews de novo the hearing

officer's legal conclusions, including whether an entity was a proper respondent in

the due process proceedings. *See generally J.W. ex rel. J.E.W. v. Fresno Unified*

*Sch. Dist.,* 626 F.3d 431, 438 (9th Cir. 2010); *Capistrano Unified Sch. Dist. v.*

*Wartenberg,* 59 F.3d 884, 891 (9th Cir. 1995).

## ANALYSIS

Before turning to the parties' arguments, the Court will provide a brief

overview of the relevant statutory framework. This overview is replete with

acronyms, a practice the Court ordinarily avoids. The Court departs from that

practice here, however, because the parties and courts across the country routinely

rely on a familiar set of acronyms, including IDEA, FAPE, IEP, LEA, and SEA.

These acronyms are so entrenched that they have become part of the lexicon in

these cases. As the Supreme Court aptly observed: "Welcome to—and apologies

for—the acronymic world of federal legislation." *Fry v. Napoleon Cmty. Schs.*, 580

U.S. 154, 158 (2017).

## A.    The Statutory Framework

The Individuals with Disabilities Education Act (IDEA) guarantees a "free appropriate public education" (FAPE) to every child with a disability. *See* 20 U.S.C. § 1412(a)(1)(A). A FAPE is defined as "special education and related services that," among other things (1) "meet the standards of the State educational agency" and (2) "have been provided at public expense, under public supervision and direction, and without charge." § 1401(9)(A), (B). The central mechanism for providing a FAPE is the Individualized Education Program (IEP). §§ 1412(a)(4), 1414(d). The IEP is a written statement that includes the child's present performance levels, services that will be provided, annual goals, and criteria for evaluating progress toward those goals. § 1414(d)(1)(A).

To ensure that a FAPE is provided to all children with disabilities, the IDEA provides that federal funding be distributed to state educational agencies (SEAs), which, in turn, allocate those funds to local educational agencies (LEAs). *See* § 1411. LEAs are charged with directly providing or arranging for third-party provision of a FAPE, *see, e.g.,* § 1414; however, SEAs "retain[] primary responsibility for ensuring compliance with the IDEA and for administering educational programs for disabled children," *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of Newark*, 344 F.3d 335, 340 (3d Cir. 2003); *see also* § 1412(a)(11)(A)

(holding the SEA "responsible for ensuring that ... the requirements of [the IDEA] are met" and "all educational programs ... meet the educational standards of the [SEA]"). When an LEA "is unable to establish and maintain programs of free appropriate public education that meet the requirements of [the IDEA]," the SEA is required to "use the payments that would otherwise have been available to a local educational agency or to a State agency to provide special education and related services directly to children with disabilities." § 1413(g)(1).

Anticipating that disagreements will sometimes arise between parents or guardians of children with disabilities and their LEAs, the IDEA requires that SEAs establish specific procedural safeguards to facilitate resolution. *See generally* § 1415. For example, SEAs must afford parents and guardians the opportunity to file a due process complaint, § 1415(b)(7), and, where such a complaint is filed, provide an impartial due process hearing before a hearing officer, § 1415(f)(1)(A). Judicial review of the hearing officer's decision is governed by 20 U.S.C. § 1415(i), which authorizes a civil action by "[a]ny party aggrieved by the findings and decision made in the due process hearing." As will be discussed next, the party wishing to seek judicial review must file a civil action within 90 days of the hearing officer's decision.

With this statutory framework in mind, the Court turns to the pending motions to dismiss, beginning with the Idaho Department of Education's motion.

MEMORANDUM DECISION AND ORDER - 6

**B.      The Idaho Department of Education's Motion to Dismiss**

**1.      Timeliness**

The Idaho Department of Education argues that A.H.'s lawsuit is untimely because he did not sue within 90 days of the hearing officer's order dismissing it from the administrative proceeding. The Court disagrees.

The hearing officer dismissed the Idaho Department of Education from the due process proceeding on May 15, 2025, but the administrative case continued against the remaining respondents. The due process proceeding concluded on July 16, 2025, when the hearing officer issued a decision resolving the matter in its entirety. Plaintiff filed this action on August 26, 2025—well within 90 days of the July 16, 2025 decision.

Under 20 U.S.C. § 1415(i)(2)(B), plaintiffs are obligated to file their action within 90 days "from the date of the decision"—singular—"of the hearing officer," unless state law provides otherwise. Elsewhere, the statute refers to a single due process hearing conducted by "a hearing officer" and resulting in a single decision. *See* 20 U.S.C. §§ 1415(f)(1)(A), 1415(f)(3)(A), 1415(f)(3)(E), 1415(g), 1415(i)(1)(A). As such, the statute does not contemplate interlocutory rulings triggering separate appeal periods.

The Court is not persuaded that § 1415(i)(2)(B) requires a party to file a civil action within 90 days of an interlocutory order dismissing a particular respondent

while the due process proceedings continue. Read as a whole, § 1415 establishes a unitary administrative process culminating in a single decision subject to judicial review. Interpreting the statute to require or permit multiple, piecemeal civil actions arising from a single due-process complaint would fracture the review scheme Congress enacted and is not supported by the statutory text.

The Idaho Department of Education cites district court decisions in support of its argument, including *Paul G. v. Monterey Peninsula Unified School District,* 256 F. Supp. 3d 1064, 1073 (N.D. Cal. 2017) and *B.B. v. Tacoma School District,* No. C08-5414RBL, 2009 WL 159204, at *3 (W.D. Wash. Jan. 22, 2009). To the extent those cases can be read to endorse multiple appeals from a single due process proceeding, the Court finds them unpersuasive. As already noted, the statutory scheme consistently refers to a single hearing and a single decision, and the Court declines to read into it a requirement for staggered judicial review. Plaintiff's action was thus timely, so the Court will proceed to the merits.

## 2.    The Merits

On the merits, Plaintiff argues that the Idaho Department of Education was a proper respondent in the due process proceeding based on the Department's general supervisory authority and its ultimate responsibility to ensure compliance with the IDEA. The Court is not persuaded.

The Court begins by observing that 20 U.S.C. § 1415(b)(6)(A), the provision

governing due-process complaints, does not limit who may be named as a respondent in a due-process proceeding. That section speaks only to the permissible subject matter of due-process complaints, providing that parties must be allowed to "present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child . . . ." § 1415(b)(6)(A). Certainly, there is nothing in the statutory language categorically prohibiting naming an SEA in a due-process complaint. *Accord R.V. v. Rivera,* 220 F. Supp. 3d 588, 594 (E.D. Pa. 2016) (concluding that the language of § 1415(b)(6)(A) does not preclude bringing a due-process complaint against a SEA).

But that observation does not end the inquiry. The question here is whether the Idaho Department of Education was properly included as a respondent on the specific facts alleged here—where plaintiff challenges the provision of services to a single student, the SEA did not directly provide those services to the student, the plaintiff seeks a remedy from the LEA, and there is no allegation that the LEA would be unable to provide the requested remedy.

The Ninth Circuit has not squarely addressed this question. Courts that have considered it, however, generally hold that an SEA is not a proper respondent in a due-process hearing absent allegations that it directly provided the educational services or was required to assume responsibility because the LEA was unable to

provide a FAPE to the student. *See, e.g., Chavez v. N.M. Pub. Educ. Dep't,* 621 F.3d 1275, 1283 (10th Cir. 2010) (holding that the state educational agency was properly excluded from the administrative process where it was not involved in providing the student's educational program); *M.K. by & through Barlowe K. v. Prestige Acad. Charter Sch.,* 302 F. Supp. 3d 626, 630 (D. Del. 2018) (observing that "[o]rdinarily, disputes regarding a FAPE denial are between parents and LEAs"); *Rivera,* 220 F. Supp. at 594 (observing that "[w]here there is an existing LEA that could be held responsible for alleged FAPE violations, then it, and not the SEA, would be the proper party in a due process hearing").

The Court finds these cases persuasive and, based on the facts alleged here, concludes that the Idaho Department of Education should be dismissed as a defendant. Plaintiff alleges that A.H. was educated by the Nampa School District No. 131 and that the alleged denial of a FAPE arose from the school district's decisions regarding placement, individualized education programming, and least restrictive environment. Plaintiff does not allege that the Idaho Department of Education provided A.H. with direct educational services or that it directed or approved the challenged placement decisions. Nor does Plaintiff allege that the Nampa School District is unable to provide a FAPE such that the Idaho Department of Education's direct-services obligation under § 1413(g) would be triggered. Further, plaintiff's prayer for relief demonstrates that he seeks a remedy

from the Nampa School District alone. *See Comp.,* Dkt. 1, at 22. He asks this Court

to compel the school district to provide him with (1) "an appropriate educational

program in the least restrictive environment to meet his needs" and (2)

"compensatory educational services" for the 2024/2025 academic school year. *Id.*

Finally, Plaintiff does not allege a systemic deficiency in statewide policies

that caused the alleged denial; the allegations target the actions of a single school

district in educating a single child. Plaintiff does generally allege that the school

district maintains a district-wide policy of not allowing students with disabilities to

attend its campus. That allegation does not alter the analysis. Plaintiff does not

allege that the Idaho Department of Education adopted, approved, or enforced such

a policy, or that the Department failed to act in the face of circumstances requiring

it to assume direct responsibility for services. This Court concludes that a district-

wide policy, without allegations of state involvement or statewide enforcement

failure, remains a dispute between the parents and the LEA.

For that reason, plaintiff's reliance on *Emma C. v. Eastin*, No. C96-4179-

THE, 2007 WL 4554321 (N.D. Cal. Dec. 20, 2007) is misplaced. *Emma C.* arose

from a California school district's continued failure to implement IEPs for more

than half of students with disabilities within its borders, and the parties to that

litigation entered into a consent decree requiring the California Department of

Education to implement an effective monitoring system. Significantly, the *Emma*

MEMORANDUM DECISION AND ORDER - 11

*C.* order did not squarely address an individualized due process hearing challenging the provision of a FAPE to a single student, nor did it hold that a state educational agency must be named as a respondent in such proceedings based solely on its general supervisory authority. The allegations here—focused on the educational decisions of a single local school district and unaccompanied by claims of state- level involvement—are distinguishable from those in *Emma C.*

Finally, Plaintiff accuses the Idaho Department of Education of misleading the Court by failing to cite or discuss controlling Ninth Circuit authority. *Motion Mem.,* Dkt. 8, at 2. This argument is without merit. First, the "controlling authority" plaintiff points to is *J.N. v. Oregon Dep't of Ed.,* No. 24-2080 (9th Cir. July 7, 2025) (unpublished)—an  unpublished opinion that may not be regarded as precedent. *See* 9th Cir. R. 36-3(b). Second, *J.N.* addressed a mootness argument; it did not directly address the issue before this Court. Third, even if *J.N.* had squarely addressed whether SEAs may be named in administrative proceedings, the facts are distinguishable. *J.N.* was a class-action lawsuit, where the plaintiffs sought relief for alleged systemic deficiencies. Here, a single individual alleges failure at the LEA-level, and he seeks a remedy solely for himself.

In sum, given the specific allegations in this case, the hearing officer correctly dismissed the Idaho Department of Education from the administrative case. The Court will therefore grant its motion to dismiss.

MEMORANDUM DECISION AND ORDER - 12

**C.    The Idaho Department of Health & Welfare's Motion to Dismiss**

The Court will also grant the Idaho Department of Health & Welfare's (IDHW) motion to dismiss. Plaintiff's theory for keeping IDHW in this case is that because A.H. resided at SWITC, IDHW acted in place of a parent and therefore had a duty to ensure A.H. was enrolled in school and receiving a FAPE, including by forming an interagency agreement or providing education itself. Plaintiff also relies on federal regulations stating that IDEA applies broadly to state and local agencies involved in educating children with disabilities, including "other State agencies and schools (such as Departments of Mental Health and Welfare)." *See Response,* Dkt. 9, at 7-8.

This theory runs headlong into Plaintiff's own allegations and the nature of the administrative proceeding being reviewed. Plaintiff alleges that SWITC "does not provide direct educational services," and that its staff instead contacted the Nampa School District to enroll A.H. *See Comp.* ¶¶ 75-80, Dkt. 1. Plaintiff further alleges that Nampa School District employees were the "teachers coming to work with" A.H. in the homebound placement and that Nampa School District made the key placement decisions that form the basis of the alleged denial of a free appropriate public education.  *Id.* ¶¶ 75-83. Indeed, in describing the due process proceeding, Plaintiff identifies the "main issue" as whether the Nampa School District denied A.H. a FAPE, and he acknowledges that the due-process request

sought determinations about the Nampa School District's placement and individualized education program decisions, while only generally asserting that the Department of Health and Welfare "failed to ensure" A.H. received a free appropriate public education while in its custody. *Id.* ¶¶ 15, 35, 138.

Given these allegations, the hearing officer appropriately dismissed IDHW. IDHW did not provide direct educational services to A.H. nor did it have an obligation to do so where the Nampa School District was the entity responsible for providing those services. IDHW's motion correctly frames the point: absent facts connecting IDHW to the provision of special education services at issue, the dispute belongs (as Plaintiff's allegations reflect) between the parent and the local school district that developed and implemented A.H.'s program. *See generally Barlowe K.,* 302 F. Supp. 3d at 630 ("Ordinarily, disputes regarding a FAPE denial are between parents and LEAs.")

And while Plaintiff is correct that IDEA and its regulations can bind "other State agencies" in appropriate circumstances, that does not mean every state agency with custodial or collaborative duties becomes a proper respondent in a special-education due process proceeding when the pleaded facts show the local school district was the direct educational provider.

For all these reasons, the Court will affirm the dismissal of IDHW from the due-process proceeding and grant IDHW's motion to dismiss.

**D.      Dismissal Without Leave to Amend**

Typically, the Court would grant plaintiff leave to amend—even though he did not request it. But in this instance, the Court finds it appropriate to dismiss both the Idaho Department of Education and IDHW without leave to amend. Dismissal of both moving defendants rests on legal conclusions regarding whether they were proper respondents in the underlying IDEA due-process proceeding, not on pleading deficiencies that could be cured through amendment. Plaintiff's allegations affirmatively establish that the challenged educational decisions and services were provided by the Nampa School District. Under these circumstances, the Court concludes that amendment would be futile, and dismissal without leave to amend is appropriate as to both IDHW and the Idaho Department of Education.

**ORDER**

**IT IS ORDERED that:**

1.      Defendant The Idaho State Department of Education's Motion to

Dismiss (Dkt. 5) is **GRANTED.**

2.      Defendant The Idaho Department of Health & Welfare's Motion to

Dismiss (Dkt. 7) is **GRANTED.**

DATED: January 30, 2026



B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15